**Dated: December 1, 2016**

**The following is ORDERED:**



*Tom R. Cornish*
TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:
ONDRE ORLANDO REYNOLDS,             Case No. 14-80966-TRC
            Chapter 7
         Debtor.

FIRST BANK AND TRUST CO.

         Plaintiff

v.                                                           Adv. Case No. 15-08008-TRC

ONDRE ORLANDO REYNOLDS

         Defendant.

### **OPINION**

Plaintiff First Bank and Trust Co. seeks to deny Defendant Debtor Ondre Reynolds' discharge pursuant to 11. U.S.C. § 727(a)(2), (4), (5) and (6). In the alternative, Plaintiff seeks to except debt from discharge pursuant to 11. U.S.C. § 523(a)(2) and (6). Plaintiff alleges that Debtor misrepresented possession of collateral, failed to adequately protect collateral, made false statements in his bankruptcy schedules, and withheld relevant financial information to First Bank's

detriment. Defendant Debtor denies any misrepresentation and claims that First Bank's agents were well aware of his financial situation and the status of its collateral. Based upon the facts and applicable case law, the Court finds in favor of Defendant.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and may hear this case pursuant to 28 U.S.C. § 157(b)(2)(I) and (J). Venue is proper pursuant to 28 U.S.C. § 1408.

## Findings of Fact

The parties have stipulated to the following facts as set forth in the Pre-Trial Order:

1. Plaintiff is an Oklahoma banking institution which is federally chartered. Its principal office is located in Duncan, Oklahoma (hereinafter "First Bank").

2. The Defendant is a debtor who filed a voluntary Petition under Chapter 13 of the Bankruptcy Code in the Eastern District of Oklahoma on August 18, 2014, and converted to a Chapter 7 on April 8, 2015. (Defendant is hereinafter referred to as "Reynolds").

3. Reynolds executed a Promissory Note dated May 1, 2013, for the principal sum of $40,027.91, being Promissory Note No. 4303180.

4. Reynolds executed a Commercial Security Agreement dated May 1, 2013, pledging as collateral a 2007 Great Dane Reefer trailer and 2004 Freightliner Columbia to secure Promissory Note No. 4303180.

5. Reynolds executed a Promissory Note dated December 3, 2013 for the principal sum of $4,196.00, being Promissory Note No. 4303287.

6. Reynolds executed a Commercial Security Agreement dated December 3, 2013, pledging as collateral a 2007 Great Dane Reefer Trailer.

7. Reynolds executed a Promissory Note dated December 12, 2013 for the principal sum of $37,922.00, being Promissory Note No. 4303386.

8. Reynolds executed a Commercial Security Agreement dated December 12, 2013, pledging as collateral a 2008 Prostar Premium.

9. Reynolds filed a Chapter 13 Bankruptcy Petition on August 18, 2014 and listed the 2007 Great Dane Trailer and 2008 Prostar Premium among his assets.

10. Reynolds filed a voluntary conversion April 8, 2015 and filed his summary of assets and liabilities on April 22, 2015 and listed the 2007 Great Dane Trailer and 2008 Prostar Premium among his assets.

In addition to these stipulated facts, this Court makes the following findings of fact:

11. At the time he filed bankruptcy, Reynolds was the owner-operator of a cross-country trucking business. He operated this business as DOD Reynolds, LLC, with himself as the sole shareholder.

12. Reynolds began a business relationship with First Bank in 2013. First Bank loaned him $25,000 to purchase a used 2007 Great Dane Reefer trailer, a refrigerated trailer. His loan officer at First Bank was Richard Geurin ("Geurin"). At that time, Reynolds owned a 2004 Freightliner Columbia free and clear.

13. In April of 2013, the 2004 Freightliner broke down in Colorado. Due to its age and previous repairs, Reynolds determined that it was not worth repairing. He called Geurin to inform him of this.

14. Since the 2004 Freightliner was no longer operable, Reynolds purchased a Peterbilt truck for $33,000, sometime in May of 2013. The purchase was financed by an unrelated entity, Sun Trust Bank.

15. In May of 2013, First Bank refinanced Reynold's original loan and loaned Reynolds an additional $15,000 in operating capital. It entered into a promissory note for $40,027.91, which included the $25,000 Reynolds owed for the 2007 Great Dane Reefer trailer as well as the additional $15,000. First Bank and Reynolds entered into two Commercial Security Agreements in which Reynolds and DOD Reynolds, LLC pledged collateral for the note. One security agreement listed the 2007 Great Dane Reefer trailer "previously pledged & filed", and the other pledged the 2004 Freightliner which Reynolds already owned but which Reynolds had decided not to repair. Reynolds did not question how the loans were secured.

16. Reynolds damaged the 2007 Great Dane Reefer trailer while working in Indiana in October of 2013. He had to leave the trailer at Great Dane Trailers of Indianapolis for repairs, which were estimated to take 60 to 90 days to complete. The repairs totaled $13,267.55. Great Dane Trailers told Reynolds it would work with him regarding paying off the repair bill.

17. Reynolds made a claim on his insurance policy for the 2007 Great Dane Reefer trailer and notified Geurin or his assistant of the damage to the trailer. Insurance proceeds of $12,479.08 were made payable in a check to Reynolds and First Bank. Reynolds presented the check to Geurin's assistant. Reynolds deposited $7,901.25 of the proceeds into his business account at First Bank, and used some of those funds to lease another trailer to replace the damaged trailer. A portion of the funds totaling $3,782.58 was used to pay off a loan with First Bank, and the remainder was used to make Reynold's November loan payment to First Bank.

18. On November 23, 2013, Reynolds was involved in a multiple vehicle crash on an icy interstate highway near Vega, Texas. The crash resulted in the deaths of 3 people. Reynolds was not at fault, but his 2007 Peterbilt truck and leased trailer were impounded for investigation. The

Peterbilt was a total loss but the trailer was undamaged. Reynolds' debt on the Peterbilt was paid off by insurance.

19. As a result of the Texas accident and impoundment of his vehicles, Reynolds was unable to work for approximately 60 days. Reynolds notified Geurin of the accident. First Bank made two additional loans to Reynolds to help him stay in business. Geurin was the loan officer on each of these loans. The first was on December 3, 2013 for $4,196, secured by the 2007 Great Dane Reefer trailer, which was being repaired in Indiana at that time. The second was made on December 12, 2013 for $37,900. This loan was used to purchase a 2008 Prostar Tractor truck.

20. Each of Reynold's security agreements with First Bank were cross-collateralized. At First Bank's request, Reynolds could be required to inform First Bank of the location of the collateral. Reynolds was prohibited from transferring or disposing of the collateral, and from permitting the collateral to become subject to a lien or other security interest or encumbrance.

21. A further consequence of the Texas accident was that Reynolds' insurance was cancelled, new insurance was extremely expensive, and he was required to maintain a reserve account of approximately $200,000 to $400,000 to stay in business.

22. In late March of 2014, the DPF filter on the 2008 Prostar truck malfunctioned. Federal regulations require that this pollution control device be operational on large trucks. Reynolds was prohibited from driving this truck until the filter was repaired. The repairs were made in Ardmore, Oklahoma, and cost Reynolds $4,741.76.

23. Reynolds filed a chapter 13 bankruptcy on August 18, 2014. He listed as personal property the 2008 Pro Star truck and the 2007 Great Dane Trailer with a combined value of $50,000, and a 2001 Great Dane Trailer with a $0 value that he identified as being leased from a friend. At that

Case 15-08008    Doc 80    Filed 12/01/16    Entered 12/01/16 13:54:19    Desc Main
Document    Page 5 of 17

time, there were no mechanics liens against the trailer and he considered himself to be the owner of the trailer.

24. His plan was ultimately confirmed on December 16, 2014. The plan provided that the claims of First Bank would be paid in full, consisting of 59 monthly payments of $1,381.46 each, at 4.25% interest. The collateral identified in the plan was the 2008 Pro Star.

25. First Bank did not object to confirmation of the plan, nor did a representative of the Bank attend Reynold's 341 meeting. Summer Byrd, First Bank's representative at trial, testified that the Bank relied upon Reynolds' schedules indicating that he possessed the 2007 trailer and the 2008 Prostar. It agreed with the treatment of its claims under Reynolds' confirmed plan.

26. In January of 2015, the DPF filter on the 2008 Pro Star truck failed again. Reynolds took the truck to MHC Kenworth in Dallas, Texas for repairs. The repair costs were estimated to be between $14,000 and $20,000. Reynolds did not have sufficient funds available to pay this bill.

27. Without the ability to repair the 2008 Pro Star, Reynolds decided that he had no choice but to convert to chapter 7. At conversion, Reynolds had paid $11,600 in plan payments.

28. Reynolds notified his attorney of the location of the collateral. He remained in communication with Great Dane in Indiana in an effort to pay the repair bills. He did not intend to abandon the 2007 Great Dane Reefer trailer; however, he was never able to pay off the repair bill nor pick up the trailer in Indiana.

29. Sometime in February of 2015, First Bank received notice that the 2007 Great Dane trailer was in Indiana with a balance due for repairs.

30. At conversion in April of 2015, Reynolds filed a Statement of Intent notice that he intended to surrender the 2008 Prostar truck and 2007 Great Dane trailer to First Bank.

31. In June of 2015, First Bank received a Notice of Sale of Motor Vehicle to Satisfy Lien from MHC Kenworth in Dallas, Texas. The Notice stated that MHC Kenworth would record a mechanic's lien in Dallas County, and demanded full payment of $5,210.35 for repairs due on a 2008 Prostar. The Notice also stated that unless payment was made, MHC Kenworth would apply for a vehicle title in its name or would sell the truck on July 23, 2015 at its premises.

32. Reynolds did not give written notice to First Bank that the 2007 Great Dane Reefer trailer was left in Indiana for repairs, nor did he provide the Bank with written notice that the 2008 Prostar truck was left in Dallas for repairs.

33. At the date of trial, Reynolds believes that the 2007 Great Dane trailer is still in Indiana, and the 2008 Prostar truck is in Dallas at MHC Kenworth.

## Conclusions of Law

**I.** **Denial of Discharge pursuant to 11 U.S.C. § 727**

First Bank seeks to deny Reynolds a discharge on several grounds pursuant to § 727. A discharge of debts through bankruptcy results in "a completely unencumbered new beginning." *Grogan v. Garner*, 498 U.S. 279 (1991). This "fresh start" is limited to the "honest but unfortunate debtor." *Id*. The protections of the Bankruptcy Code are to be construed liberally in favor of the debtor and strictly against the creditor; thus grounds for denying a discharge are to be narrowly construed. *See In re Kallstrom*, 298 B.R. 753 (10th Cir. BAP 2003). The party objecting to discharge has the burden of proving by a preponderance of the evidence that grounds exist supporting the denial. Fed. R. Bankr. P. 4005; *Mathai v. Warren (In re Warren)*, 512 F.3d 1241 (10th Cir. 2008); *First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156 (10th Cir. 1991).

**A.** **11. U.S.C. § 727(a)(2): Transfers with Intent to Defraud**

To deny a discharge under § 727(a)(2), First Bank must prove that Reynolds "transferred, removed, destroyed, mutilated, or concealed" property with the intent to "hinder, delay, or defraud" a creditor or officer of the bankruptcy estate. This activity must have occurred within one year prior to filing the bankruptcy, or after the date of filing. The United States Supreme Court calls it "a blunt remedy for actions that hinder the entire bankruptcy process . . . ." *Husky Int'l Electronics, Inc. v. Ritz,* 136 S. Ct. 1581, 1589 (2016). The "intent" element of this section must be an actual intent to defraud creditors. *Warren*, 512 F.3d at 1249, *citing Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991). However, actual intent may be established through circumstantial evidence as well as inferences from a debtor's conduct. *Warren,* 512 F.3d at 1249, *citing Farmers Co-op. Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982). Although a single wrongful act or omission may be sufficient to prove actual intent, "evidence of a pattern of wrongful behavior presents a stronger case." *Freelife, Internat'l LLC v. Butler (In re Butler)*, 377 B.R. 895, 916 (Bankr. D. Utah 2006) quoting *E. Diversified Distr., Inc. v. Matus (In Re Matus)*, 303 B.R. 660, 672 (Bankr. N.D. Ga. 2004). In other words, courts should consider a debtor's "whole pattern of conduct." *Matus,* 303 B.R. at 672.

The Court does not believe that First Bank met its burden of proof to deny discharge on this ground. There was no evidence that Reynolds intentionally destroyed First Bank's collateral. The evidence was clear that the collateral was damaged through equipment malfunction or failure or from accidental damages. There was no evidence of transfer or concealment in an effort to defraud First Bank. Reynolds notified his First Bank loan officer, Richard Geurin, regarding the damage to the 2004 Freightliner in April of 2013. He also notified Geurin or his assistant of the damage to and location of the 2007 Great Dane Reefer trailer in October of 2013. The evidence also established that First Bank was a payor of the insurance proceeds for the damages to this

trailer, thus it was on notice that a claim was made and paid as of November 2013. Reynolds testified and First Bank's records indicate that the Bank directed the disbursement and application of those insurance proceeds. There was no evidence disputing Reynolds' testimony that First Bank loaned him additional funds in December of 2013 to allow him to stay in business after the fatality collision. Nor was there any evidence presented that Reynolds concealed from First Bank the location or condition of the 2004 Freightliner or 2007 Great Dane trailer in order to obtain the May 2013 loan nor the December 2013 loans.. There was no evidence that Reynolds concealed information to prevent First Bank from taking action to recover its collateral. First Bank offered no evidence that the 2007 Great Dane trailer – even in its damaged condition – was of no value or was of insufficient value to support the December 2013 loan of $4,196.00.

None of the badges of fraud are present here. There was no evidence of deliberate concealment, no allegations or evidence of conversions or transfers of assets to insiders, no allegations or evidence of gratuitous transfers of assets, no transfer of assets on the eve of bankruptcy, no allegations or evidence of a lack of cooperation with the Trustee. *See e.g. In re Ritchie,* 543 B.R. 311, 321 (Bankr. D. N.M. 2015). The Court finds Reynolds' testimony to be credible and unrefuted. Therefore, the Court cannot infer from any of Reynolds' conduct or his testimony that he engaged in a pattern of wrongful conduct with the intention of misleading First Bank in an effort to defraud it.

B.   11 U.S.C. § 727(a)(4): Making a False Oath or Account

Debtors have a duty to carefully, completely and accurately prepare schedules. First Bank argues that Reynolds knowingly and fraudulently made a false oath or account and withheld information from his bankruptcy schedules regarding the condition and location of its collateral. To deny a discharge, the false oath must be related to a material fact. Omitting assets from the

debtor's schedules or making a false statement at 341 meeting may constitute a false oath. However, a false statement based upon a mere mistake or inadvertence is insufficient to deny a discharge. A fact is material if it bears a relationship to debtor's business transactions, or concerns discovery of assets, or existence or disposition of property. Even an asset of little to no value may be material. *In re Brown*, 108 F.3d 1290 (10th Cir. 1997). In determining fraudulent intent, courts look to the facts and circumstances of each case. *In re Calder*, 907 F.2d 953 (10th Cir. 1990).

The Court finds that First Bank did not meet its burden to deny discharge under this provision by a preponderance of the evidence. Reynolds did not omit assets from his bankruptcy petition. He listed both the 2007 trailer and the 2008 Prostar and gave them a combined value of $50,000. He did not list the 2004 Freightliner, but he explained that he had abandoned it in Colorado in April of 2013 with notice to Geurin. First Bank did not inquire further regarding the Freightliner at trial, and its representative stated that it relied upon the schedules. The schedules did not list the 2004 Freightliner. Reynolds did fail to disclose on his schedules that the 2007 Great Dane trailer was in Indiana for repairs. However, he satisfactorily explained to the Court that he advised his attorney of the location of the trailer, he considered himself to be the owner of the 2007 Great Dane trailer when he filed bankruptcy in August of 2014, and he always intended to pay off the repair bills and use the trailer in his trucking business. He relied upon his attorney to provide the necessary information on the bankruptcy petition. Any omission appears innocent and was not material. The evidence established that First Bank had previously been given notice that the 2004 Freightliner trailer had been abandoned and that the 2007 trailer was in Indiana for repairs. First Bank did not attend the 341 meeting to inquire about its collateral nor the omission of the 2004 Freightliner. There is no indication nor allegation that Reynolds made a false oath at his 341 meeting. Reynolds' confirmed chapter 13 plan provided for payment in full of his debt to First

Bank, in keeping with his stated intent that he would repair the trailer and use it in his trucking business to generate income. The Court does not believe that Reynolds intentionally or deliberately concealed the abandonment of the 2004 Freightliner nor the location of the trailer to perpetrate fraud upon the Court, the Trustee or First Bank.

**C.    11 U.S.C. § 727(a)(5): Failure to Explain Loss of Assets or Insolvency**

A discharge may be denied if the debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. First Bank must prove facts establishing that a loss or shrinkage of assets actually occurred. Once it meets its initial burden of proof, the burden then shifts to the debtor to explain the loss or deficiency of assets in a satisfactory manner. *Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 618 (10th Cir. BAP 2001). The purpose of § 727(a)(5) is to provide documentation to trace how assets were depleted so that interested parties do not have to speculate as to what happened to a debtor's assets. *See Ritchie,* 543 B.R. at 324-25. Reynolds provided invoices of repairs for the 2004 Freightliner, the 2008 Prostar, and documentation of the payment and application of insurance funds regarding the 2007 Great Dane trailer. It appears to the Court that Reynolds fully disclosed, documented and explained the damage to and repairs needed for his assets and First Bank's collateral. He explained why he could no longer fund a chapter 13 plan due to the damage to the 2008 Prostar truck. Therefore, the Court finds no cause to deny discharge under § 727(a)(5).

**D.    11 U.S.C. § 727(a)(6):  Refusal to Obey Lawful Order of the Court**

The court may deny the debtor a discharge if "the debtor has refused, in the case ... to obey any lawful order of the court other than an order to respond to a material question or to testify." The party objecting to discharge must demonstrate that the debtor received an order and willfully failed to comply with its terms. *In re Jordan,* 521 F.3d 430, 433 (4th Cir. 2008). The Court finds

that First Bank did not meet its burden to deny discharge under this provision. First Bank never identified an order of the court with which Reynolds willfully failed to comply. The Court is not inclined to speculate as to what order First Bank believes Reynolds intentionally disobeyed which should result in a denial of discharge. Nevertheless, the Court assumes First Bank complains of Reynolds failure to identify the location of the Bank's collateral and his financial condition upon filing his chapter 13 case and/or converting to chapter 7. This Court cannot find any behavior that would rise to the level of a willful failure to obey. Reynolds listed the Bank's collateral on his schedules, he made payments to the chapter 13 trustee, he credibly and adequately explained to the Court why he omitted the location of the 2007 Great Dane Trailer from his schedules. He filed amended schedules and statement of intention upon conversion. The Court finds no willful failure to obey an order of the Court.

## II. Exceptions to Discharge under 11 U.S.C. § 523

As with denials of discharge under 727, exceptions to discharge must be construed strictly against a creditor and liberally in favor of the debtor. This is to effectuate the Bankruptcy Code's purpose of giving the honest but unfortunate debtor a fresh start. The party seeking to except a debt from discharge bears the burden of proving its claims by a preponderance of the evidence. *See Grogan*, 498 U.S. at 291.

### A. 11 U.S.C. § 523(a)(2): False Pretenses, False Representation, or Actual Fraud

Under this provision, a discharge under section 727 does not discharge an individual debtor from any debt for money, property, services, or credit, to the extent obtained by false pretenses, a false representation, or actual fraud. While § 727(a)(2) is the "blunt remedy" employed against debtors, § 523(a)(2) is the "tailored remedy for behavior connected to specific debts." *Husky*

*Int'l,* 136 S. Ct. at 1589. To establish that a claim is non-dischargeable under section 523(a)(2)(A) the creditor must prove: (1) the debtor made a false representation; (2) the debtor made the representation with the intent to deceive the creditor; (3) the creditor relied on the representation; (4) the creditor's reliance was reasonable; and (5) the debtor's representation caused the creditor to sustain a loss. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir.1996)

First Bank alleges that Reynolds misrepresented the location of its collateral before it loaned him money in December of 2013, and again when he filed bankruptcy. However, the evidence does not support its claim. As the Court has previously discussed, Reynolds' testimony that he notified Geurin and his assistant of the abandonment of the 2004 Freightliner and the damage and location of the 2007 Great Dane trailer was credible and unrefuted. In fact, there were no allegations nor evidence offered by First Bank that Reynolds misrepresented the existence or condition of the 2004 Freightliner. First Bank's representative, Ms. Byrd, stated that the Bank relied upon Reynolds' schedules in deciding whether to object to the chapter 13 plan or challenge the treatment of its claims. Since it did not do so and the Freightliner was not included in the schedules, it appears to the Court that the Bank was not surprised nor unaware that the Freightliner had been abandoned before the December of 2013 loans were made. Further, Reynolds testified that First Bank loaned him those funds because he needed to purchase a truck if he was to stay in business and generate income after the fatality accident in October. If the Freightliner had been available at that time for Reynolds to use, why would he have needed to purchase a replacement truck? According to Reynolds, the loans were $4,196 for operating funds and $37,922 to purchase the 2008 Prostar. The timing of those loans after the fatality accident supports Reynolds' explanation.

There was no testimony nor evidence offered by First Bank to indicate that Reynolds supplied false financial statements to obtain the December 2013 loans. First Bank offered no evidence that it relied upon Reynolds' ownership of the Freightliner as additional collateral for the December 2013 loans. No supporting loan documents or financial statements representing Reynolds' assets, income or financial position were offered into evidence, nor did First Bank allege that Reynolds ever supplied any such documentation to obtain any of his loans with the Bank. Instead, there was testimony that Reynolds had an established banking relationship with First Bank and that he had made payments on his loans. His testimony that he always hoped his business would turn around and he would be able to bring his loans current and pay them off was credible. It appears to the Court that Reynolds was open and honest with Geurin regarding his financial position. This does not indicate to the Court that Reynolds intended to deceive First Bank regarding his financial situation nor the collateral used to secure these loans. The preponderance of the evidence weighs in favor of Reynolds. The Court finds that no false representation or omission was made by Reynolds to First Bank. However, even if the Court were to assume that First Bank prevailed on this element, the Court finds no evidence that Reynolds made a false representation or omission with a disregard for the truth, with an intent to deceive, or that First Bank justifiably relied upon the representation.

### B.      11 U.S.C. § 523(a)(6): Willful and Malicious Injury

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury," whether or not that injury is the result of fraud. *See Husky,* 136 S. Ct. at 1588, citing *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998). In *Kawaauhau v. Geiger,* the United States Supreme Court determined that the term "willful" modifies the word "injury" in § 523(a)(6) and, therefore "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional

*act* that leads to injury." *Id*. at 61 (emphasis in original). Thus, recklessly or negligently inflicted injuries are not excepted from discharge under § 523(a)(6). *Id*. at 64.

First Bank did not establish that Reynolds inflicted any deliberate or intentional injury upon it. Instead, it only asserted that it would not have loaned money to Reynolds in December 2013, had it been aware that the damaged 2007 Great Dane trailer was still being held for repairs in Indiana. Even if that were true, it does not support an action under § 523(a)(6). The Bank's injury, *i.e.,* losses on its loans to Reynolds, was not the result of a deliberate or intentional action taken against it by Reynolds. As the Court has repeatedly observed, it appears from First Bank's own records that it was aware of the damage to the trailer and its location in December 2013 when it loaned additional funds secured by the trailer. Reynolds' testimony that he notified First Bank of the trailer's status and location was credible and undisputed. Reynolds' testimony that he notified First Bank regarding the abandonment of the 2004 Freightliner was unrefuted. In fact, First Bank never pressed Reynolds to explain the May 2013 loan secured by the Freightliner nor did it argue that it relied upon his possession of the Freightliner to make the December 2013 loans. Reynolds' explanation that he informed his counsel of all of his assets, including their location and condition, is credible. Even if he should have informed First Bank that the trailer was damaged and left in Indiana, this does not establish a willful injury. The most that could be said is that Reynolds' failure to update First Bank of the location of the damaged 2007 Great Dane trailer was an act that led to injury.

As for First Bank's losses on the December of 2013 loan secured by the 2008 Prostar, the Court finds no support for its argument that it would not have loaned those funds had it known the location of the 2007 trailer. The Court has found that First Bank was given notice regarding the location and condition of the trailer. The evidence also established that Reynolds purchased the

2008 Prostar with the proceeds of the second loan made by First Bank in December of 2013, and that he needed to purchase the Prostar because his other truck was damaged and impounded after the October 2013 fatality accident. Any failure to inform First Bank of the location of the trailer could only qualify as a negligent act or omission that led to an injury, not the type of willful injury contemplated by § 523(a)(6). *Kawaauhau,* 523 U.S. at 64.

Moreover, the Court finds no willful or intentional actions taken by Reynolds that injured First Bank after he filed bankruptcy. The evidence established that he had possession of the Prostar when he filed in August of 2014. The truck's DPF filter broke down in January of 2015. Once he received accurate repair estimates, it became clear that he could not pay for those repairs and stay in chapter 13. He converted his case to chapter 7 on April 8, 2015, and filed his notice of intent to surrender the collateral. His explanation for omitting from his schedules the location of the 2007 Great Dane trailer may establish negligence, but it does not establish a willful or intentional act. Efforts to thwart the collection of a debt do not constitute a separate injury under § 523(a)(6) because such efforts did not create the debt, but occurred after the injury or debt arose. *See In re Kirwan,* 558 B.R. 9 (Bankr. D. Mass. 2016). Neither the allegations nor the evidence support an exception to discharge under § 523(a)(6).

## Conclusion

This case is based primarily on general allegations of improper conduct by Reynolds. These allegations are not supported by the evidence. Instead, Reynolds offered credible testimony and evidence that he is the proverbial honest but unfortunate debtor who struggled to maintain his business as long as he could in an effort to provide a living for himself and pay off his creditors. For all of the above stated reasons, the Court finds that First Bank has not sustained its burden of proving Reynolds' discharge should be denied pursuant to 11 U.S.C. § 727(a)(2), (4), (5) or (6),

nor of proving an exception to discharge for any debt owed to it by Reynolds pursuant to 11 U.S.C. § 523(a)(2) or (6). The Court shall enter a separate judgment in favor of the Debtor.

###